# FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JUN 2 0 2013

STEPHEN C. WILLIAMS
U.S. MAGISTRATE JUDGE
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE MATTER OF THE SEARCH OF )
)
**A LENOVA LAPTOP COMPUTER,** ) CASE NUMBER *13-mJ-7049*
**MODEL N580, BEARING SERIAL** )
**NUMBER CB20967914** )
)

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

I, Mark A. Krug, being duly sworn depose and say:

I am a Special Federal Officer with the Federal Bureau of Investigation, and have reason to

believe that located within the following computers known as:

### A Lenova Laptop Computer, Model N580, bearing serial number
### CB20967914

which is an item in the possession of the United States Probation Office, East St. Louis, St. Clair

County, Illinois, which is within the Southern District of Illinois, there is now concealed certain

electronic data, including:

### SEE ATTACHED LIST ENTITLED "ATTACHMENT A"

which constitutes evidence of the commission of a criminal offense or which is contraband, the

fruits of crime, or things otherwise criminally possessed, or which is designed or intended for use

or which is or has been used as the means of committing an offense; all in violation of Title 18,

United States Code, Sections 2252 and 2252A, specifically evidence related to the possession

and/or receipt of images of minors engaged in sexually explicit activity.  The facts to support the

issuance of a search warrant are as follows:

### AFFIDAVIT

1.     I am a Special Federal Officer of the Federal Bureau of Investigation assigned to

the FBI's Child Exploitation Task Force (CETF) based in the Springfield Division at Fairview Heights, Illinois. I have been so assigned for approximately 6 1/2 years. I am also a police officer with the Collinsville, Illinois Police Department assigned to the Detective Bureau. I have been a sworn police officer for over 17 years. During this time I have investigated a variety of federal and state offenses, including wire fraud, mail fraud, violent crimes, computer related crimes, crimes against children, and crimes involving the abuse and distribution of dangerous and controlled drugs within the United States. I have investigated matters involving the online exploitation of children, particularly regarding the possession, receipt, and transmission of images of child pornography. I have been the case agent on more than twenty cases involving the receipt, possession, and distribution of child pornography, interstate travel for illicit sex acts with a child, and other crimes involving child exploitation. I have assisted in numerous other cases investigated by other law enforcement officers, both state and federal. I have gained expertise in the conduct of such investigations through numerous training seminars, classes, and everyday work related to conducting these types of investigations. I speak regularly with FBI forensic computer examiners and received training in the search and recovery of computers, peripherals, computer data, imaging computer hard drives, and interpreting on-line computer activity from data logs and Internet Service Providers. I have conducted forensic examinations of computers in which computer files containing videos and pictures of child pornography were recovered months and years after they were originally downloaded.

2.      I make this affidavit in support of a warrant to search **a Lenova Laptop Computer, Model N580, bearing serial number CB20967914 (hereinafter "SUBJECT COMPUTER")**, turned over to the United States Probation Department for the Southern District of Illinois by Arlynn Gene Georgeson, of 2 Timber Bluff Court, Glen Carbon, Madison County, Illinois, which

is within the Southern District of Illinois.

3.     This affidavit seeks to search for and to seize contraband, evidence or instrumentalities of violations of Title 18, United States Code, Sections 2252 and 2252A, specifically evidence related to the possession and/or receipt of images of minors engaged in sexually explicit activity.

4.     The statements contained in this affidavit are based upon my training and experience as a Special Federal Officer of the Federal Bureau of Investigation, information provided to me by United States Probation Officer Richard Wactor, other law enforcement officers and investigators, and upon my consultation with personnel trained in the investigation, seizure, and analysis of computers, electronic data, and electronic media.  Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 18, United States Code, Sections 2252 and 2252A exists on the Subject Computer.

**Computer Searches Generally**

5.     It is my belief that the items sought in this affidavit for search warrant are stored electronically.  Based upon my knowledge, training, and experience, I know that electronic files can be easily moved from one computer or electronic storage medium to another.  Therefore, electronic files downloaded to or created on one computer can be copied on or transferred to any other computer or storage medium at the same location.  In addition, I know that searching computerized information for evidence of crimes often requires officers to seize most or all of a computer system's central processing unit ("CPU") and/or laptop computer, input/output peripheral devices, related software, documentation, storage media, and data security devices,

including passwords, so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the following:

a.      Technical requirements: Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert and examiner is qualified to analyze the system and its data. In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code embedded in the system such as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

b.      The analysis of electronically stored data, whether performed on-site or in a laboratory or other controlled environment, may entail any or all of several different techniques. Such techniques may include, but shall not be limited to, surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the pertinent files, in order to locate the evidence and instrumentalities authorized for seizure by the warrant); "opening" or reading the first few "pages" of such files in order to determine their precise contents; "scanning" storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; or performing electronic "keyword" searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

c.      In some instances, the computer "writes" to storage media without the specific

knowledge or permission of the user.  Generally, data or files that have been received via the Internet are automatically downloaded into a temporary internet directory or cache.  The browser typically maintains a fixed amount of hard drive space devoted to such data or files, and the files are only overwritten as they are replaced with more recently viewed internet pages.  Thus, the ability to retrieve artifacts of electronic activity from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer usage.  Logs of access to websites, file management/transfer programs, firewall permissions, and other data assist the examiner and investigators in creating a "picture" of what the computer was doing and how it was being used during the relevant time in question.  Given the interrelationships of the data to various parts of the computer's operation, this information cannot be easily segregated.

      d.     Digital data on the hard drive that is not currently associated with any file, may reveal evidence of a file that was once on the hard drive but has since been deleted or edited, or it could reveal a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently used.  Web browsers, email programs, and chat programs store configuration date on the hard drive that can reveal information such as online nicknames and passwords.  Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and times the computer was in use. Computer file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations.

e.      Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be learned from the absence of particular data on a digital device. Specifically, the lack of computer security software, virus protection, malicious software, evidence of remote control by another computer system, or other programs or software may assist in identifying the user indirectly and may provide evidence excluding other causes for the presence or absence of items sought by this application. Additionally, since computer drives may store artifacts from the installation of software that are no longer active, evidence of the historical presence of the kind of software and data described may have special significance in establishing timeliness of usage, confirming the identification of certain users, establishing a point of reference for usage, and, in some cases, assisting in the identification of certain users. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations. Evidence of the absence of particular data on the drive is not generally capable of being segregated from the rest of the data on the drive.

### Child Pornography Collector Characteristics

6.      Based upon my knowledge, training, and experience, I am aware that child pornography distributors/collectors:

a.      Receive sexual gratification, stimulation, and satisfaction from actual physical contact with children and/or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses (in person, in photographs, or other visual media) or from literature describing such activity.

b.      Collect sexually explicit or suggestive materials (hard-core and soft-core pornography, whether of adults and/or of children) in a variety of media, such as photographs, magazines, motion pictures, video tapes, books, slides and/or drawings or other visual media that

they use for their own sexual arousal and gratification.

c.     Almost always possess and maintain their material (pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, child erotica, etc.) in the privacy and security of their homes or some other secure location.  Child pornography distributors/collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years, and store their child pornography amongst other, otherwise legal, media or files.

d.     Often correspond and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

e.     Often maintain their collection of child pornography in computer files located on a computer's hard drive or other computer media and that these computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet.  Electronic files downloaded to a hard drive can be stored for years at little or no cost.  Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools.  When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space, that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.  Similarly, files that have been viewed

via the Internet are automatically downloaded into a temporary Internet directory or "cache".  The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.  Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

### Background of Investigation

7.      On June 17, 2013, Defendant Arlynn Gene Georgeson pled guilty to an Information charging him, in Count 1, with Receipt of Visual Depictions of Minors Engaged in Sexually Explicit Conduct and, in Count 2, Possession of Visual Depictions of Minors Engaged in Sexually Explicit Conduct, and was released on a $50,000 unsecured bond.  Georgeson pled guilty to possessing over 16,282 images and 512 videos of minors engaged in sexually explicit conduct.  As conditions of his release, Georgeson was required to submit to location monitoring and to only access the SUBJECT COMPUTER at his residence.  Georgeson was also directed to permit the probation officer to have access to any personal computer and/or electronic device capable of accessing the internet, World Wide Web, and electronic, to include using software monitoring devices if deemed necessary by the probation officer.

8.      On June 20, 2013, at the direction of Assistant United States Attorney (AUSA) Angela Scott, I spoke to United States Probation Officer (USPO) Richard Wactor who has custody of the SUBJECT COMPUTER at the United States Probation Office in East St. Louis, Illinois, within the Southern District of Illinois.  USPO Wactor informed me that he took custody of the SUBJECT COMPUTER on June 19, 2013, in order to install a software monitoring program

pursuant to the order of the court. He stated that prior to installing the software, he is required to run triage software to identify any contraband on the computer before installing the monitoring software.

9.      USPO Wactor told me that the triage software flagged the following items on the SUBJECT COMPUTER:

   a) An image of a young Asian female performing oral sex on a male;

   b) Approximately 30 deleted images and 20 deleted video files in unallocated space;

   c) Visited websites;

   d) Search term for anti-forensic tool; and

   e) The presence of anti-forensic software.

USPO Wactor indicated that the anti-forensic software used was a C-Cleaner which is used to scrub information from the computer to prevent its later discovery and/or recovery. USPO Wactor stated that it appeared to him that whoever used the C-Cleaner picked only certain images and videos to delete which concerned him. According to USPO Wactor, the C-Cleaner was used on June 15, 2013.

10.      With respect to the image of the Asian female performing oral sex on a male, USPO Wactor indicated that, while he was unable to determine whether the Asian female was a minor which would make the image contraband in that it would be a visual depiction of a minor engaged in sexually explicit conduct, the Asian female to be appeared "young" to him. Based on these concerns, USPO Wactor contacted Georgeson's supervising Probation Officer George Howard who subsequently contacted AUSA Scott.

11.      Also at the direction of AUSA Scott, who had been told that the scrubbing software

was used for security purposes after any financial transactions were conducted on the SUBJECT COMPUTER, I discussed this with USPO Wactor to determine whether evidence he retrieved from the SUBJECT COMPUTER supported this assertion. AUSA Scott also told me that the SUBJECT COMPUTER had allegedly been purchased within the last six days by Georgeson's wife.

12.     USPO Wactor advised that during his examination of the websites visited, he found no indications of on-line banking or other financial transactions in the visited sites. Furthermore, USPO Wactor advised that the scrubbing software appeared to have been targeted at specific files which include .jpg files (image files) and video files, including but not limited to .avi files. I know of no financial programs that use .jpg or .avi files for transmission of financial information. Also, the use of the scrubbing software appeared to have been used on June 15, 2013, two days prior to Georgeson pleading guilty to the information as described above.

13.     According to the C-Cleaner website, C-Cleaner "removes junk files and clears Internet cookies, cache and history to keep your confidential information safe."   Additional research showed that C-Cleaner supports the cleaning of temporary or potentially unwanted files left by certain programs, including Internet Explorer, Firefox, Google Chrome, Opera, Safari, Windows Media Player, eMule, Google Toolbar, Netscape, Microsoft Office, Nero, Adobe Acrobat, McAfee, Adobe Flash Player, Sun Java, WinRAR, WinAce, WinZip, GIMP and other applications along with browsing history, cookies, recycle bin, memory dumps, file fragments, log files, system caches, application data, autocomplete form history, and various other data.

14.     During the forensic examination of the Georgeson computer which led to the criminal charges in the information as described above, 16,282 images and 512 videos depicting minors involved in sexually explicit conduct were found. These files included, but were not limited to, including .avi and .jpg files. The forensic examiner also noted that Georgeson went to great

lengths to hide the images and videos by using numerous folders and subfolders to make it difficult to find the illicit images.  In a voluntary statement, Georgeson reported that he "hoped" his wife would not find the images of the minors engaged in sexually explicit conduct because she would sometimes use his computer.  Based on my training and experience, hiding the images and videos in numerous subfolders would help "hide" these files from a casual viewer.

15.     In my training and experience, I have investigated cases where individuals who view visual depictions of minors involved in sexually explicit conduct use scrubbing programs to conceal their activity from discovery by both family members and law enforcement.

16.     In addition, based on my training and experience, a person such as Georgeson who collects and views child pornography will often continue to collect and view child pornography until that person no longer has access to a computer or other means to acquire it.  I believe that Georgeson fits the profile of a collector in that he sought out and collected an extremely large collection of images and videos depicting minors engaged in sexually explicit conduct.  Moreover, he admitted in his voluntary statement that, when LimeWire was shut down, he began using FrostWire, another peer to peer file sharing program in order to find child pornography.  This statement was corroborated during the forensic examination of Georgeson's laptop which had image and video files of minors engaged in sexually explicit conduct in both the FrostWire "Saved" and "Incomplete" folders.  The presence of 30 suspicious image and 20 suspicious video files, as well as the image file of the "young" Asian female performing oral sex on a male, so shortly after the laptop was allegedly purchased is also consistent with a collector, especially in light of the fact that Georgeson admitted to viewing the images for personal sexual gratification.  Finally, what appears to be the user's attempts to delete only certain video and image files is consistent with a user who is trying to destroy the evidence of his criminal activities before it is discovered by

another individual, such as a probation officer or his wife.

17.     Based on the above information, I believe there is probable cause to believe that the attached listed items, which are property constituting evidence of violations of Title 18, United States Code, Sections 2252 and 2252A, or property designed or intended for use or which is or has been used as the means of committing those criminal offenses which makes it a federal crime for any person to knowingly possess or receive child pornography in interstate commerce by computer, will be found on the Subject Computer.

**FURTHER AFFIANT SAYETH NAUGHT.**


Mark A. Krug, Special Federal Officer
Federal Bureau of Investigation


STEPHEN R. WIGGINTON
United States Attorney

*Angela Scott*

ANGELA SCOTT
Assistant United States Attorney

State of Illinois            )
                             ) SS
County of Franklin           )

Sworn to before me, and subscribed in my presence on the 2⁰th day of June, 2013, at East St. Louis, Illinois.


STEPHEN C. WILLIAMS
United States Magistrate Judge

˅13˅

## ATTACHMENT A
## ITEMS TO BE SEIZED

1. All data files, including but not limited to, graphic representations containing matter pertaining to child pornography, that is, visual depictions of children under the age of 18 years engaged in sexually explicit conduct.

2. Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG) containing matter pertaining to child pornography.

3. Electronic mail, chat logs, and electronic messages, offering to transmit through interstate or foreign commerce, including by United State mail or by computer, visual depictions of minors engaged in sexually explicit conduct.

4. Data files pertaining to the use of peer to peer file sharing software.

5. Data files indicating dominion, use and control of the storage device which contains them.